UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

EBONY MCPHEE, an individual,

     Plaintiff,

vs.

IJL US LLC, a Nevada Limited Liability Company,
d/b/a IT'S JUST LUNCH,

     Defendant.
_____/

## **COMPLAINT**

1.    Plaintiff, EBONY MCPHEE (hereinafter referred to as "Plaintiff" and "MCPHEE"), was an employee of Defendant, IJL US LLC, a Nevada Limited Liability Company d/b/a IT'S JUST LUNCH, and brings this action for disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553 (the "ADAAA"), and the Florida Civil Rights Act, F.S. §760.01 *et seq.*

2.    At all times material to this Complaint MCPHEE was an individual residing in Broward County, Florida, within the jurisdiction of this Court.

3.    Defendant, IJL US LLC (hereinafter referred to as "Defendant" and "IJL US LLC"), has at all times material to this Complaint owned and operated an international matchmaking service doing business as IT'S JUST LUNCH to facilitate dates for clients at approximately 150 locations including at 14471 Miramar Parkway, Suite 401, Miramar, Florida 33027 in Broward County, Florida, within the jurisdiction of this Court.

4.     Jurisdiction is conferred on this Court by 28 U.S.C. §1331, §1332, §1337 and §1367, and 42 U.S.C. §12101 *et seq*.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all of the events, or a substantial part of the events, giving rise to this action, occurred in Broward County, Florida, within the jurisdiction of the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

6.     In April 2021, MCPHEE began working for IJL US LLC as an Executive Matchmaker in Miramar, Florida based upon the regular rate of $19.23 per hour.

7.     At all times material to the action, IJL US LLC was a business engaged in interstate commerce and had Fifteen (15) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

8.     At all times material to this action, MCPHEE was an "employee" of IJL US LLC within the meaning of the ADAAA, 42 U.S.C. §12111(4), and FCRA, F.S. §760.10(1)(a).

9.     At all times material to this action, IJL US LLC was an "employer" of MCPHEE within the meaning of the ADAAA, 42 U.S.C. §12111(5),  and FCRA, F.S. §760.02(7).

10.     At all times material to this action, including between approximately April 2021 and October 2021, MCPHEE was an individual with one or more chronic mental or psychological conditions, including but not necessarily limited to bipolar disorder, the condition formerly called manic-depressive illness or manic depression, a mental disorder that causes unusual shifts in MCPHEE's mood, energy, activity levels, concentration, and the ability to carry out day-to-day tasks.

11.     At all times material to this action, including between approximately April 2021 and October 2021, MCPHEE suffered from a "mental impairment" within the meaning of the

ADA, 29 C.F.R. §1630.2(h)(1), as a result of one or more mental or emotional illnesses including MCPHEE suffering from bipolar disorder which, *inter alia*, substantially limited Plaintiff in one more major life activities including, by way of example: reading, concentrating, thinking, communicating, and interacting with others.

12.     Between April 2021 and October 2021, MCPHEE satisfactorily performed her essential duties as an Executive Matchmaker for IJL US LLC, namely to sell IT'S JUST LUNCH matchmaking services to clients to facilitate client dating experiences while MCPHEE was required to meet both individual and team monthly sales goals.

13.     In early August 2021, between the pressure of the workload on MCPHEE as an Executive Matchmaker for IJL US LCC, the deals Plaintiff worked on for Defendant each day, and the emotional nature of the clients serviced by MCPHEE for Defendant in the matchmaking business—combined with Plaintiff's disability/handicap due to her mental illness—MCPHEE suffered a nervous breakdown at work, which MCPHEE discussed on or around August 7, 2021 with Plaintiff's immediate supervisor, Julie Yarworth, Defendant's Vice-President of Executive Matchmaking.

14.     In September 2021, MCPHEE completed two (2) weeks of new Customer Relations (CR) training with IJL US LLC and Defendant gave MCPHEE the "Rockstar of the Month" award for the month of September 2021.

15.     Additionally in September 2021, MCPHEE requested accommodations from Yarworth to Plaintiff's work assignments at IJL US LLC because of MCPHEE's disability/handicap, her mental illness, but IJL US LLC denied Plaintiff's accommodation request.

16.     On October 15, 2021, Yarworth notified MCPHEE that IJL US LLC was terminating Plaintiff's employment purportedly because of a "bad" phone call that Defendant said

took place the day before with a client of IJL US LLC despite the fact that MCPHEE had not spoken to any client with the name identified by Defendant in several weeks.

17.     On October 17 and 18, 2021, MCPHEE submitted written complaints to IJL US LLC about what Plaintiff believed was the illegal termination of her employment based upon disability/handicap discrimination against Plaintiff.  See Composite Exhibit A.

18.     However, IJL US LLC failed to take remedial action to address the discrimination against MCPHEE and Defendant did not resolve Plaintiff's internal discrimination complaints.

19.     IJL US LLC's termination of MCPHEE's employment in April 2021 was based upon MCPHEE's disability/handicap, and/or was because of IVANOVA's exercise of her rights under the ADA and FCRA, all in violation of the express provisions of both the ADA and FCRA.

20.     The reasons proffered and relied upon by IJL US LLC in October 2021 for terminating MCPHEE's employment were false and known to be false by Defendant at the time of Plaintiff's termination and instead were a pretext for unlawful disparate treatment and disability/handicap discrimination and retaliation against MCPHEE in violation of the ADA and FCRA.

## EXHAUSTION OF ADMINISTRATVIE REMEDIES

21.     On November 12, 2021, MCPHEE dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission for Human Relations (FCHR) Charge No. 510-2022-00924 alleging that she had been subjected to disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.  A copy of MCPHEE's Charge of Discrimination is attached hereto as Exhibit B.

22.     On April 7, 2022, the EEOC issued a Dismissal and Notice of Suit Rights to MCPHEE in connection with Charge No. 510-2022-00924, which Notice was received by MCPHEE on April 8, 2022 and which is attached hereto as Exhibit C.

23.     As of July 5, 2022, more than One Hundred and Eighty (180) days have passed since the filing of MCPHEE's Charge of Discrimination Charge No. 510-2022-00924 on November 12, 2021 and the FCHR did not issue any determination concerning MCPHEE's Charge.  As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was reasonable cause," MCPHEE has exhausted all administrative remedies under Florida as well as Federal law.

24.     MCPHEE's Complaint is being filed with the Court on July 5, 2022 within Ninety (90) days of MCPHEE's receipt of the EEOC's Dismissal and Notice of Suit Rights for Charge No. 510-2022-00924.

25.     All conditions precedent to the institution of this action have either occurred or been waived.

### COUNT I
### DISABILITY DISCRIMINATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

Plaintiff, EBONY MCPHEE, reasserts and reaffirms the allegations of Paragraphs 1 through 25 as if fully set forth herein and further states that this is an action against IJL US LLC, for disparate treatment and disability discrimination in violation of the Americans with Disabilities

Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553. ("ADAAA").

26.     The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a), prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

27.     At all times material to this action including during MCPHEE's employment with IJL US LLC between April 2021 and October 2021, MCPHEE suffered from one or more chronic mental or psychological conditions, including but not necessarily limited to Plaintiff's bipolar disorder.

28.     At all times material to this action, MCPHEE suffered from one or more  "mental impairments" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(h)(1), as a result of a mental or psychological disorder that entailed an emotional or mental illness (bipolar disorder).

29.     At all times material to this action, MCPHEE was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i), including but not necessarily limited to: reading, concentrating, thinking, communicating, and interacting with others.

30.     At all times material to this action, MCPHEE was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. §12102(1), because Plaintiff (a) suffered mental impairments that substantially limited one or more major life activities; (b) had a record of such mental impairments; and/or (c) was regarded by IJL US LLC as a person with such mental impairments.

31.     At all times material to this action, MCPHEE had to endure substantial limitations as a result of Plaintiff's bipolar disorder and related medical condition(s) within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because MCPHEE's medical condition(s) substantially limited Plaintiff's ability to perform one or more major life activities—including but not necessarily limited to reading, concentrating, thinking, communicating, and interacting with others —as compared to most people in the general population.

32.     At all times material to this action, MCPHEE was "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because MCPHEE's bipolar disorder and related medical conditions constitute one or more actual mental impairments that substantially limit one or more of MCPHEE's major life activities.

33.     In addition, at all times material to this action, MCPHEE was also "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because MCPHEE was regarded by IJL US LLC as having a mental impairment that substantially limited one or more of her major life activities as a result of MCPHEE's bipolar disorder and related medical condition(s).

34.     At all times material to this action, MCPHEE was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job as an Executive Matchmaker for IJL US LLC between approximately April 2021 and October 2021 with or without reasonable accommodation by Defendant.

35.     At all times material to this action, MCPHEE was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because MCPHEE possessed the requisite skill and experience to carry out her essential duties as am Executive Matchmaker for IJL US LLC between approximately April 2021

and October 2021, and MCPHEE likewise was capable of performing the essential functions of her job between even between April 2021 and October 2021 despite MCPHEE's disability, with or without reasonable accommodation(s) by IJL US LLC.

36.     Further, MCPHEE was also qualified for her job with IJL US LLC as an Executive Matchmaker within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of MCPHEE's mental illness and chronic medical condition because IJL US LLC could have and should have provided MCPHEE with reasonable accommodation(s).

37.     Between approximately August 2021 and October 2021, IJL US LLC subjected MCPHEE to disparate treatment, harassment, and discrimination in violation of 42 U.S.C. §12112 which was motivated by MCPHEE's disability, bipolar disorder, and Defendant discriminated against MCPHEE because of her disability in violation of 42 U.S.C. §12112, including but not limited to: (a) IJL US LLC failing to provide a reasonable accommodation for MCPHEE's disability; and (b) IJL US LLC terminating MCPHEE's employment in October 2021 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived disability.

38.     IJL US LLC terminated MCPHEE's employment in October 2021 because of MCPHEE's actual and/or perceived disability—mental illness—in violation of 42 U.S.C. §12112(a).

39.     The reasons proffered and relied upon by IJL US LLC in October 2021 for terminating MCPHEE's employment were false and a pretext for discrimination against MCPHEE because of her disability, bipolar disorder, in violation of 42 U.S.C. §12112(a).

40.     IJL US LLC knowingly and willfully engaged in conduct prohibited by the ADA and ADAAA against MCPHEE because of her disability so as to discourage, dissuade and/or otherwise dishearten MCPHEE.

41.    MCPHEE's actual and/or perceived disability was a motivating factor in IJL US LLC's decision to terminate MCPHEE's employment in October 2021 as an Executive Matchmaker, in violation of 42 U.S.C. §12112.

42.    IJL US LLC's violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to MCPHEE's rights guaranteed under the laws of the United States.

43.    MCPHEE has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of IJL US LLC's violations of the ADA and ADAAA.

44.    MCPHEE has retained the undersigned counsel to represent him in this action and pursuant to 42 U.S.C. §12205, MCPHEE is entitled to recover her reasonable attorneys' fees and costs from IJL US LLC

WHEREFORE, Plaintiff, EBONY MCPHEE, demands judgment against Defendant, IJL US LLC, for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff, EBONY MCPHEE, reasserts and reaffirms the allegations of Paragraphs 1 through 25 as if fully set forth herein and further states that this is an action against IJL US LLC, for Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12203, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553.

45.    The Americans with Disabilities, ADA and ADAAA, 42 U.S.C. §12203(a), provides that: "No person shall discriminate against any individual because such individual has

opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter."

46.   Similarly, the ADA and ADAAA also provide, 42 U.S.C. §12203(b), that it shall "be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of her or her having exercised or enjoyed, or on account of her or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

47.   At all times material to this action, MCPHEE was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered one or more mental impairments that substantially limited one or more major life activities; (b) had a record of such mental impairments; and/or (c) was regarded by IJL US LLC as a person with such mental impairments.

48.   MCPHEE was at all times material to this action a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of her job as an Executive Matchmaker for IJL US LLC between approximately April 2021 and October 2021 with or without reasonable accommodation.

49.   MCPHEE engaged in statutorily protected activity under the ADA and ADAAA on multiple occasions between approximately August 2021 and October 2021 by, *inter alia*, MCPHEE exercising or attempting to exercise or enjoy her rights under the ADA, including but not limited to: (a) MCPHEE communicating with Julie Yarworth about Plaintiff's mental illness,

nervous breakdown, and bipolar disorder; and (d) MCPHEE requesting an accommodation in September 2021 from IJL US LLC for Plaintiff's disability.

50.     IJL US LLC subjected MCPHEE to adverse employment actions including but not necessarily limited to Defendant terminating Plaintiff's employment in October 2021 as an Executive Matchmaker based upon discriminatory and/or pretextual grounds because of Plaintiff's disability and Plaintiff's communications with Defendant's management about discrimination because of an actual or perceived disability, all because MCPHEE engaged in statutorily protected activity under the ADA and ADAAA.

51.     IJL US LLC's retaliatory actions against MCPHEE constitute violations of the ADA and ADAAA, which prohibits employers from discriminating against an individual because he has opposed any act or practice made unlawful under the ADA/ADAAA, 42 U.S.C. §12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA/ADAAA on account of him having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. §12203(b).

52.     IJL US LLC's termination of MCPHEE's employment as an Executive Matchmaker in October 2021 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff exercising her rights under the ADA because of MCPHEE's bipolar disorder and Plaintiff having made an accommodation request to IJL US LLC for Plaintiff's disability, in violation of the ADA.

53.     The fact that MCPHEE engaged in activity protected by the ADA was a motivating factor in IJL US LLC's termination of Plaintiff's employment in October 2021, in violation of 42 U.S.C. §12203.

54.     The reasons proffered and relied upon by IJL US LLC in October 2021 for terminating MCPHEE's employment were a pretext for unlawful retaliation against MCPHEE in violation of 42 U.S.C. §12203.

55.     As a direct and proximate result of IJL US LLC's unlawful retaliation against MCPHEE in violation of the ADA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial.

56.     IJL US LLC's actions have caused MCPHEE to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

57.     IJL US LLC's actions were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, MCPHEE's federally protected rights under the ADA, as a result of which Plaintiff is entitled to punitive damages from Defendant.

58.     Pursuant to 42 U.S.C. §12205, MCPHEE is entitled to recover her reasonable attorneys' fees and costs from IJL US LLC as a result of Defendant's violations of the ADA's anti-retaliation provisions.

WHEREFORE, Plaintiff, EBONY MCPHEE, demands judgment against Defendant, IJL US LLC, for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## <u>COUNT III</u>
## <u>HANDICAP DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10  - DISCRIMINATION BASED ON HANDICAP</u>

Plaintiff, EBONY MCPHEE, reasserts and reaffirms the allegations set forth in paragraphs 1 through 25 above and further states that this is an action against IJL US LLC, for age and handicap discrimination in violation of the Florida Civil Rights Act, F.S. §760.10 *et seq.*

59.     Florida Statutes §760.10(1)(a) provides that: "It is unlawful employment practice for an employer: To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, **handicap**, or marital status." <u>Id.</u> (emphasis added).

60.     At all times material to this action, MCPHEE  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

61.     IJL US LLC knowingly and willfully discriminated against MCPHEE because of Plaintiff's handicap, bipolar disorder, on one or more occasions between approximately April 2021 and October 2021 culminating in Defendant terminating Plaintiff's employment as an Executive Matchmaker because of MCPHEE's handicap in October 2021, in violation of F.S. §760.10(1).

62.     Furthermore, despite the facts that MCPHEE satisfactorily performed her essential duties as an Executive Matchmaker for IJL US LLC and that Plaintiff was still qualified to serve as an Executive Matchmaker in October 2021, Defendant unlawfully terminated MCPHEE in October 2021 because of Plaintiff's handicap, in violation of F.S. §760.10(1).

63.     At all times material to this action, MCPHEE suffered from a chronic and/or permanent medical condition as a result of mental illness (bipolar disorder) and related medical condition(s), which condition(s) constitute an actual or perceived "handicap" within the meaning

of the FCRA, as MCPHEE's condition was chronic and involved mental or psychological/emotional illness.

64.     At all times material to this action, MCPHEE was a qualified individual with a handicap within the meaning of the FCRA because MCPHEE possessed the requisite skill and experience to carry out her duties as an Executive Matchmaker for IJL US LLC and MCPHEE likewise was capable of performing the essential functions of her job despite Plaintiff's handicap, with or without reasonable accommodation(s) by IJL US LLC

65.     Further, at all times material to this action MCPHEE was also qualified for her job as an Executive Matchmaker for IJL US LLC within the meaning of the FCRA even in the face of the impact of MCPHEE's mental illness being a handicap because IJL US LLC could and should have provided MCPHEE with reasonable accommodation(s) for Plaintiff's handicap.

66.     Between approximately August 2021 and October 2021, IJL US LLC subjected MCPHEE to disparate treatment, harassment, and discrimination which was motivated by and was because of MCPHEE's handicap, bipolar disorder, in violation of F.S. §760.10(1)(a), by *inter alia*: (a) IJL US LLC failing to provide a reasonable accommodation for MCPHEE's handicap; and (b) IJL US LLC terminating MCPHEE's employment in October 2021 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived handicap.

67.     IJL US LLC knowingly and willfully engaged in conduct prohibited by the Florida Civil Rights Act against MCPHEE because of Plaintiff's handicap (mental illness) so as to discourage, dissuade and/or otherwise dishearten MCPHEE.

68.     When IJL US LLC terminated MCPHEE's employment as an Executive Matchmaker in October 2021, a motivating factor behind Defendant's termination of Plaintiff's employment was MCPHEE's handicap, bipolar disorder, in violation of F.S. §760.10(1)(a) & (b).

69.     The reasons proffered and relied upon by IJL US LLC in October 2021 for terminating MCPHEE's employment as an Executive Matchmaker were false and a pretext for discrimination against MCPHEE because of her handicap in violation of F.S. §760.10(1).

70.     IJL US LLC's violations of MCPHEE's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for MCPHEE's rights as guaranteed under the laws of the State of Florida, such that MCPHEE is entitled to punitive damages from IJL US LLC pursuant to F.S. §760.11(5).

71.     Pursuant to F.S. §760.11(5), MCPHEE is entitled to recover her reasonable attorneys' fees and costs from IJL US LLC as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, EBONY MCPHEE demands judgment against Defendant, IJL US LLC, for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT IV
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10

Plaintiff, EBONY MCPHEE, reasserts and reaffirms the allegations set forth in paragraphs 1 through 25 above and further states that this is an action against IJL US LLC, for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

72.     Pursuant to the Florida Civil Rights Act (FCRA), F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

73.     At all times material to this action, MCPHEE  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

74.     MCPHEE engaged in statutorily protected activity under the Florida Civil Rights Act on multiple occasions between approximately August 2021 and October 2021 by, *inter alia*, (a) MCPHEE communicating with Julie Yarworth about Plaintiff's mental illness, nervous breakdown, and bipolar disorder; and (b) MCPHEE requesting an accommodation in September 2021 from IJL US LLC for Plaintiff's handicap.

75.     IJL US LLC subjected MCPHEE to adverse employment actions including but not necessarily limited to Defendant terminating Plaintiff's employment in October 2021 as an Executive Matchmaker based upon discriminatory and/or pretextual grounds because of Plaintiff's handicap, bipolar disorder, and Plaintiff's communications with Julie Yarworth about Plaintiff's mental illness, all illegal conduct by Defendant against MCPHEE because of an actual or perceived handicap, all in violation of F.S. §760.10(7).

76.     IJL US LLC's termination of MCPHEE's employment in October 2021 was unlawful retaliation in violation of the Florida Civil Rights Act because of Plaintiff exercising her rights under the FCRA for MCPHEE's bipolar disorder and Plaintiff having made an accommodation request to IJL US LLC for Plaintiff's handicap, in violation of F.S. §760.10(7).

77.     IJL US LLC's unlawful retaliation against MCPHEE was sufficiently severe and pervasive to alter the terms, conditions, and privileges of MCPHEE's employment with IJL US LLC culminating with Defendant's termination of MCPHEE's employment in October 2021, in violation of F.S. §760.10(7).

78.     The fact that MCPHEE engaged in activity protected by the FCRA was a motivating factor in IJL US LLC's termination of Plaintiff's employment in October 2021, in violation of F.S. §760.10(7).

79.     The reasons proffered and relied upon by IJL US LLC in October 2021 for terminating MCPHEE's employment were a pretext for unlawful retaliation against MCPHEE in violation of F.S. §760.10(7).

80.     IJL US LLC's violations of MCPHEE's rights under F.S. §760.10 were intentional and were done with malice and reckless disregard for MCPHEE's rights as guaranteed under the laws of the State of Florida, such that MCPHEE is entitled to punitive damages from IJL US LLC pursuant to F.S. §760.11(5).

81.     MCPHEE has suffered lost earnings, emotional distress, loss of self-esteem and other injuries as a direct result of IJL US LLC's violations of F.S. §760.10(7).

82.     Pursuant to F.S. §760.11(5), MCPHEE is entitled to recover her reasonable attorneys' fees and costs from IJL US LLC as a result of Defendant's violations of the FCRA.

WHEREFORE, Plaintiff, EBONY MCPHEE, demands judgment against Defendant, IJL US LLC, for back pay, employment benefits, other compensation including commissions and bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees, and such other and further relief as this Honorable Court deems proper.

## **JURY TRIAL DEMAND**

EBONY MCPHEE demands trial by jury on all issues so triable.

Dated:  July 5, 2022     Respectfully submitted,


       By: **<u>KEITH M. STERN</u>**
         Keith M. Stern, Esquire
         Florida Bar No. 321000
         E-mail:  <u>employlaw@keithstern.com</u>
         LAW OFFICE OF KEITH M. STERN, P.A.
         80 S.W. 8th Street, Suite 2000
         Miami, Florida 33130
         Telephone:  (305) 901-1379
         Fax:  (561) 288-9031
         Attorneys for Plaintiff

# EXHIBIT A

-------- Original message --------
From: ebonymcphee <ebonymcphee@yahoo.com>
Date: 10/18/21 4:29 PM (GMT-05:00)
To: Tarrah Pacheco <Tarrah.Pacheco@ijlcorp.com>, JulieY-IJL <juliey@ijlcorp.com>
Subject: RE: Requested Accomdations Prior to Termination

I believe I was subjected to disability discrimination and retaliation because of my request for an accommodation for a mental health issues( bipolar disorder). This call occurred nearly 3 weeks ago and prior to our Customer Relations training. Furthermore I acknowledged multiple times even in email correspondences that I no longer wanted to be the matchmaker for Seattle (exactly where this client resides Heather Rose) for my mental health to both Connie and Julie in a meeting after they wanted to understand why I no longer wanted to be the Seattle matchmaker. That request was placed prior to that call and you guys blatantly ignored my request. Prior to me being matchmaker for Seattle I had no complaints of this magnitude. You never stated once that I had complaints from coworkers citing abrasive behavior nor was a meeting conducted regarding that or an itemized list of examples reflecting that.

Sent from Samsung Galaxy smartphone.

-------- Original message --------
From: Tarrah Pacheco <Tarrah.Pacheco@ijlcorp.com>
Date: 10/18/21 2:58 PM (GMT-05:00)
To: ebonymcphee <ebonymcphee@yahoo.com>, JulieY-IJL <juliey@ijlcorp.com>
Subject: RE: Requested Accomdations Prior to Termination

Hi Ebony,

First, I want to thank you for the time you served as an Executive Matchmaker. At IJL we take the decision to end employment very seriously and would never terminate out of retaliation. As Julie Yarworth mentioned in the meeting on Friday, it was deemed that your behavior was considered unacceptable per our IJL performance standards. During a call with a client, you made statements to the client including "I am not a slave" and "I'm not perfect and neither are you". This call followed a pattern of clients and coworkers reporting that your behavior towards them is perceived as abrasive, defensive and overall unprofessional. IJL made the decision to terminate employment based on failure to comply with the IJL performance standards by means of discourteous and unprofessional behavior towards clients and other IJL employees.

We will be sure to add the gift card dollar value to your final paycheck. As for the unused VTSL hours, per the VTSL policy, any unused accrued time is forfeited at the time of separation of employment. You will receive your final check on 10/29/2021. Upon termination your insurance will expire at the end of the current month; therefore your coverage will end on 10/31/2021. Admin America will be sending you information regarding COBRA and continuing the benefits in which you are currently enrolled within 30 to 44 days after your termination date. If you have any questions, you can contact the Admin America Client Service Team directly at (678) 578-4638.

If you have any questions, please do not hesitate to contact me.

Thank you,

Tarrah



**Tarrah Pacheco**

HR Manager | It's Just Lunch
US Direct: 954-602-0406

Direct Fax: 954-602-9785
E: Tarrah.Pacheco@IJLCorp.com
www.itsjustlunch.com

*Featured in the NY Times:*

https://nyti.ms/2t6085A

"The information contained in this e-mail message is intended only for the personal and confidential use of the designated addressee(s) only. If the reader of this message is not an addressee or the intended recipient, you are hereby notified that you have received this message in error, and that any review, dissemination, forwarding, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify me immediately by calling me at the above noted telephone number and by return e-mail. You should then immediately delete this message from your computer system. Thank you."

---

**From:** ebonymcphee <ebonymcphee@yahoo.com>
**Sent:** Sunday, October 17, 2021 4:50 PM
**To:** JulieY-IJL <juliey@ijlcorp.com>; Tarrah Pacheco <Tarrah.Pacheco@ijlcorp.com>
**Cc:** conniea@ijlcorp.com
**Subject:** Requested Accomdations Prior to Termination

Hi Julie, I truly believe that I was terminated in retaliation for my request for a reduce workload due to my mental health. If you recall I sent you an email requesting to no longer be the matchmaker of Seattle due to me not being able to handle the clients and the stark rise in C.R's I began to receive compared to my previous months when I only handled Sacramento, Portland, Fresno, Modesto and some of New York. You then called me into a meeting, with Connie as a witness with me advising you that for my mental health I could no longer be the Matchmaker in Seattle. You said, "This is Its Just Lunch we all have a large workload its what being an Executive Matchmaker is all about". After I repeatedly stated "for my mental health I can't do it". You then advised me that you had a new training class that would be coming in and that you would hire someone to specifically take over that area but you never asked me to put my request in writing for you to approve it. That definitely was unusual especially when you approved my request for a seat accommodation near the window that I put in an email between September 1st and September 15th advising you for my mental health and for increased moral support I wanted my seat to be changed near the window which was approved within 24 hours. I've only received one write up since my tenure with Its Just Lunch. You and I had a very close personal relationship where I disclosed extremely private details about my life including my mothers illness, my past childhood traumas with sexual abuse, and my mental health issues which include a diagnosis of bipolar disorder (hence why you transferred client Trisha Salmon from New York City to me because Missy couldn't handle her breakdowns over the phone back in April).

Furthermore you stated I was terminated for a bad call I had with a client named "Heather" (you refused to disclose

which Heather and just ceased speaking all together) on Thursday 10/14  which was completely untrue. Both clients Heather Rose and Heather Sabbak have not been contacted by me in weeks. You didn't even disclose why the call was supposedly so egregious that only termination would be the end result. You also just made me complete a C.R training in the past 2 weeks so that I would be able to handle customer relation issues, where Julie Lopez provided tips and techniques that weren't previously shared during our initial new hire training and I have not received any C.Rs since. I'm raising these questions because we just had the Anti Discrimination seminar and I want to understand how you intend to address this. Also I received Rockstar of the Month for September but I haven't received the $50 gift card will this along with all my remaining Pto hours be applied to my final check? Thanks

Ebony McPhee

Sent from Samsung Galaxy smartphone.

# EXHIBIT B

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:     Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC   **510-2022-00924**

Florida Commission on Human Relations     and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ebony McPhee | ▇ | ▇87 |

| Street Address | City, State and ZIP Code |
|---|---|
| ▇ | Hallandale Beach, Florida ▇ |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No (Incl Area Code) |
|---|---|---|
| IJL US LLC d/b/a It's Just Lunch | 15+ | (305) 405-8900 |

| Street Address | City, State and ZIP Code |
|---|---|
| 14471 Miramar Parkway, Suite 401 | Miramar, Florida 33027 |

| Name | No. Employees, Members | Phone No (Incl Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest     Latest    Oct 15, 2021

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In April 2021, I began working for Respondent as an Executive Matchmaker based upon the regular rate of $19.23 per hour. Between April 2021 and October 2021, I satisfactorily performed my duties as an Executive Matchmaker for Respondent.

In early August 2021, between the pressure of the workload as a Matchmaker for Respondent, the deals we worked on, and the emotional nature of clients we worked with in the matchmaking business, combined with my disability from mental health disease, I suffered a nervous breakdown at work, which I discussed on or around August 7, 2021 with my immediate supervisor, Respondent's Vice-President of Executive Matchmaking, Julie Yarworth.

In September 2021, I requested accommodations to my work assignments because of my disability but Respondent denied my request.

On October 15, 2021, Julie Yarworth notified me that Respondent was terminating my employment purportedly because of a "bad" call that Respondent said took place the day before with a client despite the fact that I had not spoken to any client with the name identified by Respondent in several weeks. Similarly, I had just completed two (2) weeks of new Customer Relations (CR) training and Respondent had given me the "Rockstar of the Month" award for the month of September 2021.

I believe Respondent subjected me to disparate treatment and discrimination because of my disability and Respondent retaliated against me because I exercised my rights for my disability, culminating in the unlawful termination of my employment in October 2021, all in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 11/12/2021    *EZGorgeous . (Nov 12, 2021 17:11 EST)*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EXHIBIT C



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/07/2022

**To:** Ms. Ebony McPhee
███████████████
Hallandale Beach, FL ████
Charge No: 510-2022-00924

EEOC Representative and email:    Erline Jocelyn
    Investigator
    erline.jocelyn@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2022-00924.

On behalf of the Commission,

Digitally Signed By:Roberto Chavez
04/07/2022

Roberto Chavez
Acting Director

**Cc:**
Jonathan Beckerman
jonathan.beckerman@lewisbrisbois.com

Tarrah Pacheco
IJL US LLC D/B/A IT'S JUST LUNCH
Tarrah.Pacheco@IJLCorp.com

Andrea De Ona
andrea.deona@lewisbrisbois.com

Keith M Stern
LAW OFFICE OF KEITH M. STERN, P.A.
kms@workingforyou.com


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 510-2022-00924 to the District Director at Roberto Chavez, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.